Hopkins *v.* German Beneficial Union et al., Appellants.

Argued April 22, 1931.

Before TREX-
LER, P. J., KELLER, GAWTHROP, CUNNINGHAM, BALDRIGE
and DREW, JJ.

*John A. Metz,* and with him *Moorhead & Marshall,*
for appellants, cited: Bennett Lumber & Manufactur-
ing Co. v. Hartrick, 61 Pa. Superior Ct. 456; Johnson
Service Co. v. Fayette Title & Trust Building, 96 Pa.
Superior Ct. 535; Wharton v. Investment Company,
180 Pa. 168.

*George A. Baldwin* of *Baldwin & Baldwin,* for ap-
pellee.

Opinion by Cunningham, J., July 8, 1931:

The German Beneficial Union, one of the appellants, is the owner of a lot situated on Maplewood Avenue in the Borough of Ambridge, Beaver County. This lot, of a uniform width of 44 feet, extends back 100 feet to an alley in the rear.

The union entered into a contract with A. Pyzdrowski, the other appellant, for the erection of a hall and club room on the lot and the general contractor sublet the excavating to appellee. After the building was completed, appellee filed a mechanic's lien claiming a balance due him for the work done. Appellants then moved to strike off the lien as a whole, and also to strike off certain specific items. The court below struck off the third and fourth items, but allowed the first and second to stand. A scire facias was then issued, the case tried before a jury, and a verdict rendered in favor of appellee for $730.54. Motions for judgment n. o. v. and for a new trial were made and refused, and this appeal was taken from the judgment entered on the verdict.

The contentions of appellants resolve themselves into two: (1) the item upon which the judgment is based was a "lumping charge" and therefore improper in that it failed to segregate the work; and (2) the evidence offered by appellee as to the actual amount of earth removed was so opposed to the uncontroverted physical facts that the verdict should not be permitted to stand. These propositions will be separately considered.

To understand appellants' first contention it is necessary to quote the items as stated in the mechanic's lien. They are as follows:

"All the excavating required for the cellar and foundations of said building, and extra excavating, as follows: 2037 cubic yards at $.98 per cubic yard, the said price being the price agreed upon between the

claimant and the contractor and the said 2037 cubic yards being the excavating required by the said contract, $1,996.26.

"300 cubic yards of excavation at $.98 per cubic yard, being extra excavation required by the said contractor and done by the claimant at the special instance and request of said contractor, $294."

Two further items (covering a bonus and planking) were stricken off by the lower court and need not be considered here since appellee has raised no point as to them. It is the theory of appellants that the first item, which is for 2037 cubic yards, includes both the excavation required under the contract and also certain extra excavating done at the request of the general contractor. With this premise, it is argued that the item is a lumping charge since it does not state how much of the excavation was done under the contract and how much was extra, and does not give the details of such extra work.

We need not discuss the particularity necessary in a mechanic's lien since we are satisfied appellants are in error in treating this as a lumping charge. The argument is superficial and based solely on a matter of paragraphing. It is obvious that the language, "All the excavating required for the cellar and foundations of said building, and extra excavating, as follows," is merely an introductory sentence referring to both items. The lien then details, first, the amount of excavation required by the contract (2037 cubic yards) and second, the amount of extra excavation, 300 cubic yards, with the prices and totals for each. The words, "and the said 2037 cubic yards being the excavating required by the said contract," are plainly referable only to the "excavating required for the cellar and foundations of said building" as distinguished from the "extra excavating," since the extra excavating is separately described. A break

after the words "as follows" makes the meaning clear. Each item is therefore indivisible and independent.

Anyone reading the lien as a whole could not be confused by the way in which the items are set forth and this contention of appellants is therefore groundless; moreover, an examination of the affidavit of defense shows that the items were correctly understood, as they were there separately denied. Concluding this branch of the case, it is to be noted that appellants' contention that the item for extra excavating is faulty in that it does not set forth sufficient details is without merit. This item was withdrawn from the jury by the trial judge on the ground that the evidence offered to show the amount of extra excavating was too vague to support a finding in appellee's favor, and the verdict was solely for the balance claimed to be due for the work performed under the main contract. Appellants have therefore suffered no harm under this item.

The second contention is that the amount of excavation, as testified to by appellee and his witnesses, cannot be reconciled with the uncontroverted physical facts established by the measurements taken by appellants' engineers. The evidence on behalf of appellee was, in brief, as follows: When the excavation had been completed and before any building was done, appellee measured the depth of the excavation and found it to be 8½ feet along Maplewood Avenue and 16½ feet along the alley in the rear. Appellee further stated that the depth of the excavation was marked by stakes set by the general contractor, the levels of which were changed from time to time as the work progressed, and that the contractor approved the excavation as finally made. Although the contractor was called by appellants, no denial was made of this testimony. Immediately after his own measurements, appellee called in R. B. McDaniel, also a contractor and

engineer, who was thoroughly familiar with the lot. McDaniel made his own measurements and found that the depth along Maplewood Avenue was between 8 and 9 feet, that the depth in the rear was 17 feet, and that the average depth was 12 feet, 5 inches. A third set of measurements was made at the same time by John Urda, another contractor. His figures coincided exactly with those of McDaniel. These three witnesses all stated that at the time the measurements were taken the depth of the excavation could be ascertained from the marks of the original ground line, as they appeared on the sides of the buildings immediately adjacent to the property on the north and south.

Appellants proved that a survey of the lot was made by an engineer before the excavation was begun, which showed elevations taken at Maplewood Avenue and at 20-foot intervals back to the rear of the lot. According to it the alley was four feet higher than the front of the property. The survey was turned over to the architect, who made his plans for the building in accordance with the elevations. Both survey and plans were introduced in evidence. Appellants then called an engineer named Lippincott, who testified that he went on the property after the building had been completed, and found that, taking into consideration the architect's plans and the survey, the only excavation which the appellee could have made was to an approximate depth of six feet at the front of the lot and ten feet at the rear, and that the amount of material removed could not have exceeded 1418 cubic yards.

This evidence does not nullify appellee's case. The architect's plans are not included in the printed record, but from the references thereto in the opinion of the court below it appears that the elevations given therein are stated to be only approximations, although they are taken from the survey. Furthermore, without elaboration, it may be pointed out that the figures given by

Lippincott vary from those in the architect's plans, both as to the difference in elevation between the front and rear and also between the north and south extremities of the lot. The measurements presented, therefore, can hardly be called "undisputed." However, even if we assume that these figures are uniform, they are not conclusive. The sole question for determination was the amount of earth removed from the excavation, which necessarily involved a determination of the depth of that excavation. The witnesses for appellee gave competent testimony on that issue and were supported by the fact that their measurements were taken from marks on the ground. While appellants have attempted to show the elevation of the ground before the excavation, they have presented no direct evidence to show its actual depth. Their case rested upon the testimony of Lippincott; this, in turn, was based upon an examination of the property after the building had been completed. As he had no personal knowledge of the natural elevation of the ground before the construction was begun or the depth necessary for supports and cellar floor, his conclusions necessarily rested upon deductions from the architect's plans and the survey. To say that his conclusions cannot be contradicted, we must assume that the survey is infallible. This would be unwarranted; while it was entitled to great weight, it was open to rejection by the jury, as any other item of evidence would be.

This is not a proper case in which to apply the doctrine of "undisputed physical facts." Where all the material factors are accepted as true in a given case, then it is possible to hold that they inevitably lead to one particular conclusion. Here, however, it is precisely the measurements which are in dispute. It is true that the evidence is wholly irreconcilable. The errors may, however, have been made by the witnesses for either side and that was a question for

the jury to determine. We cannot hold either that appellants have negatived the entire force of appellee's testimony or that the verdict was so contrary to the weight of the evidence that the former are entitled to a new trial. The assignments must therefore be dismissed.

Judgment affirmed.